Good morning, Your Honors. My name is Sue Ellen Tatter. I represent Rodney Scott from the District of Alaska. Mr. Scott and I signed a plea agreement that was very different from the plea agreement in the Titus Bride case. In Titus Bride, the parties signed an agreement saying the court would determine the sentencing guidelines, but it didn't say the sentencing guidelines would be determinative. Our plea agreement on page 2 says the sentence will be determined by the sentencing guidelines, and that was an important predicate of our bargain. Counsel, you are certainly right that there's a distinction. Whether it should make a difference strikes me as the real problem. It looks to me as though we've kind of fenced you in with two precedents, saying that even though your deal was undoubtedly conditioned by what the guidelines were at the time, that nevertheless the sentence was based on the deal and not the guidelines, and that's really sort of metaphysical, I suppose. It was affected by the guidelines, but the thing about it is we have two cases saying if you have an 11A1C deal, it doesn't matter if the guidelines change. My belief in this difference, why it makes a difference, is that the statute controls over the plea agreement. Now, Mr. McBride, or Mr. Bride, had a Booker sentencing under 3553.  What do you mean when you say the statute controls over the plea agreement? It doesn't if it's a binding plea agreement, does it? The statute says that there are three exceptions to finality of sentencing, and one of the exceptions is remedial. It is the exception to remedy the disparity between crack and powder cocaine, and that says you get to challenge if your sentence was, quote, based on the sentencing guidelines, based on. But that's the whole issue. The question is is it based on the guidelines when you stipulate to the sentence, and that's the problem I'm having. If this clearly, if there were not a stipulated sentence, I think you would win, but where the parties come in and say this is the sentence that we've agreed on, I just don't see how it can be based on the guidelines. It's based on both, and the statute does not say based solely on the guidelines, and it's a remedial statute, and I believe it should be construed broadly. But if we were to allow you to withdraw, then why shouldn't we put you back in the position that you were in before, allow the government to reinstate all the charges that your client was facing, and then you can either replete or go to trial? I think that would be fair. I think that the government did say if the sentence is changed, the plea deal is off, and my client is willing to risk that. But an important part of the law, which is the remedial statute, says that if the policy statements of the Sentencing Commission are inconsistent, then you don't get to move or you don't get relief. And Mr. Bride had a 3553 sentence where the policy statements deferred to in the statute say ordinarily you will not get, the court should not reduce a sentence where you've gotten a big downward departure. And Titus Bride … But didn't the district court look at more than just the guidelines before it accepted your stipulated sentence? Didn't it look at the factors under 3553A as well? Well, 3553A was not the overarching law at the time. And I … But it was the law. It was the law. And the law incorporated a number of factors, including the guidelines in fashioning an appropriate sentence. Did it not? I think the main thing that Judge Holland looked at was the guidelines. And he, first he ordered a plea agreement, the pre-sentence report. And that writer disagreed with us and tinkered with the guidelines and said we've made mistakes in our estimate. But isn't the whole purpose for ordering the preparation of the pre-sentence report to permit the district court to satisfy itself that the party's stipulation is a reasonable stipulation? Because if the district court refuses to accept your stipulation, then you would be allowed to back out of your plea agreement and either renegotiate or go to trial. I respectfully disagree. I think Judge Holland at the time, which was in 2001, I believe, didn't look at whether it was a reasonable statement under a stipulation under 3553A. He looked at whether it fit the guidelines. And in his argument, the prosecutor conceded that Judge Holland would not have accepted it when we were arguing this motion below, that Judge Holland would not have accepted this plea agreement if it were outside the guidelines. Did he say that? Yes. And he said it on page 102 of the excerpt of record. He says, no doubt you would not have accepted this particular agreement. This isn't one of those that was outside the guidelines. Hold on. I'm looking at 102. Where is it? It's in volume 2. I'm looking at ER 102. And it's volume 2, page 102 of 151. And Mr. Cooper says, I'm pretty confident that the court would have said to the parties, you guys go outside the door and bring me something back that refers to the guideline range. This sounds like it's not the judge talking. No, it's not. It's the prosecutor. Is there something where the judge says, well, what I'm doing isn't based on your deal, it's based on the guidelines? I think, no, there's nothing like that that I found. This is the prosecutor saying, I'm pretty confident you wouldn't have accepted this. You're confident of all kinds of things that aren't so. Well, except that the judge recomputed the guidelines and disagreed with us and changed a few of the computations and then said, I can still give your stipulated sentence. I don't get it, frankly. I mean, when you get an 11E1C and you're a district judge, you look at it and you say, am I going to swallow it? And the answer is yes or no, and the guidelines may affect your judgment, the individual's history may affect your judgment. But it seems like what this Pachico case that we decided, the Pachico-Navarrette case says is right. You look at the deal. The sentence comes from the deal. What's the matter with applying Pachico-Navarrette to this case? I think this Court was right in Titus Bride in not making a per se rule. I don't think you should make a per se rule because every plea agreement has some differences. And in this case, it was a stipulated deal as long as it was consistent with the guidelines. Let's look at the plea agreement. Does it say that? Yes. It says on page two, there are numerous places where it says it, but on page two of the plea agreement. It has a lot of boilerplate here about the guidelines. Like it says, well, it's after November 1, 1987, so the guidelines will affect your sentence. But it's unfair to say that's boilerplate when that was the legal framework that we were operating under. But how is that any different from the statute which sets a maximum sentence? I mean, you could make the same argument that the sentence was negotiated based on the statute, but that doesn't really answer the question that we're wrestling with here, does it? Well, I think based on can mean many, many things, and it obviously means different things to different courts of appeals. But I think this Court should construe it as based on in part, not solely based on the guidelines. Ms. Tanner, the problem I'm having with your argument, if it were anything other than a stipulated sentence, I think you'd be fine. But the whole purpose for 11E1C or now 11C1C or whatever we renumbered it as, is to permit the parties, in essence, to negotiate their own resolution. And the only choice that the district judge has is either to accept or reject the plea agreement. In this case, the district court's choice was to accept it if it were consistent with the guidelines. And that's why I think Mr. Scott gets relief. Not every case, not every E1C should get relief. Could I reserve the last word? Yes, thanks. Good morning. May it please the Court. My name is Joseph Botini. I'm an assistant United States attorney in the District of Alaska. There's no question in this case that Mr. Scott's sentence was the product of an agreement between the parties. Counsel, let me tell you what's bothering me here. It's perfectly obvious to me that the sentence is based on an 11E1C deal. It's not a guidelines determination and then an application of 3553 and deciding where within the guidelines or outside of them the sentence. It's perfectly obvious it's based on a deal, just like Pachico-Navarrete. It is also perfectly obvious that the deal is based on the guidelines, and it seems like the much more reasonable inference from reading the plea agreement that the deal would have been different had the guidelines been different. There's no reason to doubt that had the crack cocaine amendment been made before the deal, then the deal would have been lower. Now, in that circumstance, you've certainly got the metaphysics of Pachico-Navarrete and Bride to say the deal is based or the sentence is based on the deal. It's kind of verbally artificial. It's an 11E1C, not an 11E1B, so there's a stronger argument for it than usual. But still, why shouldn't it be vulnerable, at least where the defendant's willing to go to trial, instead of taking the good but not the bad? Why shouldn't it be vulnerable when the law has been changed so the crack doesn't aggravate the sentence so much? Well, Judge Klinefeld, there's no doubt that the guidelines were considered in drafting this plea agreement. But what the court says in Bride is that it's not enough that the parties considered the guidelines in coming to an agreement. There are many other factors at play here that drove the bargain in this case. Mr. Scott, for instance, was charged with three separate 924C counts in the indictment in this case. The government agreed to dismiss those counts as part of the bargain here. Had he gone to trial on those counts and had been convicted on all three of those counts, that would have been an additional 55 years that would have had to have been posed. No, but that's true in a lot of cases where you've got pleas where, you know, charges are dismissed, right? And you could have a plea agreement, I mean, you know, an ordinary plea agreement, not 11C1E. Well, that happened, and if that's so and the judge is free to sentence, you know, this statute would apply, right? Even though charges were dismissed in part of the deal. Isn't that right? Well, I'm sorry. Had Mr. Scott gone to – If you had an ordinary plea agreement, you know, without a binding sentencing agreement. Right. In that deal, you know, quite often the prosecutor dismisses charges, right? Correct. So it's not any different than this deal. What's the difference? The difference is – No, it drives that deal as much as it drives this deal. Right. And the difference, though, is that that is the benefit of the bargain, the heart of the bargain for Mr. Scott in this case. Is what? Is that he agreed that he would be sentenced to a term of 180 months. So the dismissal of the other charges is not determinative, right? That's all I'm getting at. You said it was. Well, it was a factor, obviously. It's a factor in every plea agreement. Right. Wait, did you say the heart of the bargain is dismissal of the other charges or the heart of the bargain is the 180 months? The heart of the bargain, I think, for Mr. Scott here was that those 924Cs were going to be dismissed. In addition, this plea agreement was somewhat unique in that it incorporated concessions from a separate case involving Mr. Scott. Mr. Scott had gone to trial and had been convicted of a 924C charge in that separate case. This plea agreement built in concessions by Mr. Scott and by the government related to that separate case. The government agreed that Mr. Scott, if Mr. Scott were to be sentenced to a term of greater than 10 years in that separate case, that he could withdraw from the plea agreement in this case. In exchange, Mr. Scott agreed to withdraw a pending motion for judgment of acquittal that he had pending in that separate case. And agreed that he would not appeal his conviction or his sentence in that separate case. So this plea agreement has all sorts of factors at play, which resulted in an agreement by the parties that he would be sentenced to 180 months. Obviously contingent on the district court accepting that. And there's a question. So those 924Cs, they're all consecutive, no parole? Correct. So you get, I don't know, 10 on each or something? 30 total? I think for the first 924C it would be five years consecutive to whatever he had, whatever sentence he received on the underlying charge. But for the second and third counts, the statute that was in effect at the time, and I think still provides that he would have to be sentenced to 25 years consecutive for each of those counts, for each of the second and third 924C counts. Assuming you're correct, and I do assume you're correct, I think you're correct, that lots of factors drove this plea agreement. One of the factors, though, was the applicable guideline range, right? They were considered. Which is one of the factors. I mean, that was specifically discussed by the parties and by the court. No doubt that they were considered by the parties. Right. And what do you make of this language? This is the 10th Circuit in U.S. v. Connell. Statute imposes no requirement that to be based on a qualifying range, a sentence be a non-negotiated, run-of-the-mill guideline sentence. Instead, it generally allows for reductions of sentences which are based in any way on a qualifying range. So I think we get back to the question I think Judge Kleinfeld asked early on of your opponent. What does based on mean, right? Does it mean based only on or based predominantly on or based somewhat on? Based in any way on. And I would point out that I think the viability of ‑‑ I'll answer your question, Judge Tasheem, but the viability of Cobb I think is somewhat in question. The government had requested a rehearing en banc, and as of, I believe, the present time, the defendant had been ordered by the Circuit to respond to the en banc petition. That's the case where Judge Hartz dissented? I believe it is, yes. That was a split decision in Cobb. But based in any way, no other circuit has gone that way on this issue. Every other circuit has held that an 11E1C or C1C binding plea agreement accepted by the court is what the sentence is based on. The fact that the guidelines may have been considered by the parties, the fact that there may be an estimated guideline calculation set out in the plea agreement that reflects the negotiation of the parties is simply not enough, and that's exactly what the court said. Well, clearly at the time the guidelines were mandatory, so the court had to look at the guidelines in order to determine whether or not to accept the deal under 11E1C. That's correct, and that's why this plea agreement has an estimated range so the court can be informed of what were the parties thinking about here. But there hasn't been any change to the consecutive sentences that would otherwise be required for the 924C. I don't believe so. I don't believe that there has been a change to that. But that's really the discussion about the guidelines in the plea agreement. As you pointed out, Judge Solomon, they were mandatory at the time, and those are in there so the court has some informed basis to look at this plea agreement and say what were the parties thinking here. Is this reasonable or is it not? But again, the ultimate result in this case, the sentence of 180 months, is the product of a binding agreement by the parties should the court accept that. It's not based on the guidelines. Let me just, this may be a little bit collateral, but I think your point was asked well, what about the fact that if this is set aside, then the fair thing to do is to set aside the plea agreement. Do you think that's a consequence? That would be extremely difficult, and I think Judge Holland, for the government, should that be the result. Judge Holland recognized that in the order denying the motion to reduce sentence. I mean, the government's in a real tough position here where years later now, should that be the result, to try and figure out whether we've got witnesses around or evidence is still there or hadn't been destroyed. I mean, we would be deprived of the benefit of our bargain if that were the result. It could very likely be the result. So as you stand here today, you're not sure whether you could find a way. I don't know whether we could or not. Yeah. But I could foresee. I mean, this was a 2002 case. The evidence may be there, it may not. I don't know. I guess from your point of view, we should look at it like a contract to buy 100 widgets for $1 each, based on the market price of $1 each. It goes to $1.50, that's still the deal, $1 each. Miss, you made a deal. We made a deal. We each enjoyed the benefit of our bargain as a result of this bargain. Of course, all this means is that, you know, if we were to rule against you, go back to Judge Holland and if we exercise discretion, he could very well just impose the same sentence anyway, right? He could, but I don't think we would. That's probably what you would argue for. He could do that, but I don't think we need to get there because this is exactly the situation that the 3582C contemplates. This sentence was not based on the guidelines. Thank you. Oh, I'm sorry, I have a little time left if there's any further questions. No. Thank you, counsel. Judges, I'd just like to address the bargain, and there's been a lot of discussion about this, as if it were contract law. I just have one note is don't get too excited about the dismissed 924Cs, which are very significant, but we significantly gave up a live and colorable motion for judgment of acquittal of a big case, which they kept repeating we were giving up in the plea agreement. That was important to them. But your argument underscores the concern that I have in concluding, as you urge us to do, that it was based on the guidelines. It was based on a lot of different factors, not the least of which was the strength of your constitutional challenge, the government's 924C counts that were hanging over your client's head. But all of this had, I think, to be presented to the district court in such a way that Judge Holland could be satisfied that the stipulation was appropriate, given your client's background, criminal history, and so on. But he made the decision based partly on the guidelines, and I think the court should construe the based on language, which was not available to Mr. Pacheco-Navarrete. There was no statute controlling. He just wanted an ameline remand. We have a statute that's remedial that Congress tried to fix a disparity that was unfair, and you should construe, in my opinion, based on to mean based on partly or significantly, not based solely on the guidelines. Many, many people have stipulated sentences who should be entitled to this slight reduction. That raises a question for me. I've been trying to figure out how significant the case is for other cases. When I was a district judge, I didn't see a lot of 11A1Cs. There were mostly 11A1Bs where all the defendant got was a recommendation. Now, a case like this, you might get a recommendation plus the dismissals, which are worth a lot more than the recommendation. But I didn't see a lot of 11A1Cs. Has that become a customary deal? I think it's become a custom in these task force cases where the police are watching people for long periods of time, and they're in state and federal court, and they're complicated with lots of witnesses, and I think that I'm just guessing that the prosecutor thinks we have this big conglomerate of facts. With many agencies, we can wrap it up. And I think it's the task force which is driving the C1C idea. But this isn't contract law. I think this case should be driven by the statute. That should be interpreted broadly. I agree with all our precedent that says we look at this sort of from a contract law standpoint. That's a rule. It's a rule, and the rule can be relaxed. So this is the exception to that rule? This is one of the exceptions the statute created. Thank you. Thank you very much. Thank you, counsel. United States v. Scott is submitted.
judges: Kleinfeld, Tashima, Tallman